UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


ZAYNUS CLIFFORD CRAWFORD, III,

        Petitioner,

v.                              Case No. 3:14-cv-847-J-39PDB

SECRETARY, FLORIDA DEPARTMENT
OF CORRECTIONS, AND FLORIDA
ATTORNEY GENERAL,

        Respondents.
_____

**ORDER**

## I.   INTRODUCTION

Petitioner challenges a 2013 Clay County conviction for aggravated assault (deadly weapon).  <u>See</u> Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (Petition) (Doc. 1).  In the Petition, he raises thirteen grounds for habeas relief, but he has abandoned the thirteenth ground, a claim of ineffective assistance of trial counsel.  <u>See</u> Order (Doc. 23).  In the twelve remaining grounds, Petitioner raises the following: (1) a claim of denial of due process of law asserting his <u>Miranda</u>[1] warnings were not read to him; (2) a claim of lack of probable cause to arrest him; (3) a claim of an equal protection violation based on actual innocence; (4) a claim of racial

_____

[1] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

discrimination; (5) a claim of denial of due process of law asserting he acted in self-defense; (6) a claim of spousal immunity; (7) a claim of a Brady[2] violation based on the state's alleged failure to disclose Petitioner's ripped shirt and scratches; (8) a claim of denial of due process of law based on the state's constructive amendment of the information by stating that Petitioner could be found guilty of the lesser included offense of improper exhibition of a firearm or dangerous weapon; (9) a claim of an improper jury instruction requiring unanimity, without providing room for individual decisions and without giving an Allen charge; (10) a claim of prosecutorial misconduct; (11) a claim of judicial misconduct; and (12) a claim of altered transcripts.

Respondents filed an Answer in Response to Order to Show Cause (Response) (Doc. 24). In support of their Response, they submitted Exhibits (Doc. 24).[3] Petitioner filed a Reply to Respondents' Answer to Order to Show Cause (Reply) (Doc. 25). See Order (Doc. 5). Respondents urge this Court to deny the Petition. Response at 8-28. The Court will address the twelve remaining grounds, See

---

[2] Brady v. Maryland, 373 U.S. 83 (1963).

[3] The Court hereinafter refers to the Exhibits as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the Appendix. Otherwise, the page number on the particular document will be referenced. The Court will reference the page numbers assigned by the electronic docketing system where applicable.

<u>Clisby v. Jones</u>, 960 F.2d 925, 936 (11th Cir. 1992), but no evidentiary proceedings are required in this Court.

## II.   STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254; <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016), <u>petition for cert</u>. <u>filed</u>, – U.S. – (U.S. Oct. 14, 2016) (No. 16-6444). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id</u>. (quoting <u>Greene v. Fisher</u>, 132 S.Ct. 38, 43 (2011)).

> Under AEDPA, when a state court has adjudicated the petitioner's claim on the merits, a federal court may not grant habeas relief unless the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," <u>id</u>. § 2254(d)(2). A state court's factual findings are presumed correct unless rebutted by clear and convincing evidence.[4] <u>Id</u>. § 2254(e)(1); <u>Ferrell v. Hall</u>, 640 F.3d 1199, 1223 (11th Cir. 2011).

---

[4] "This presumption of correctness applies equally to factual determinations made by the state trial and appellate courts." <u>Pope v. Sec'y for Dep't of Corr.</u>, 680 F.3d 1271, 1284 (11th Cir. 2012) (quoting <u>Bui v. Haley</u>, 321 F.3d 1304, 1312 (11th Cir. 2003)), <u>cert</u>. <u>denied</u>, 133 S.Ct. 1625 (2013).

> ..."It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." [Harrington v. Richter, 562 U.S. 86, 101 (2011)] (citing Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18, 124 S.Ct. 7, 157 L.Ed.2d 263 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253–54 (11th Cir. 2013), cert. denied, 135 S.Ct. 67 (2014).

In applying AEDPA deference, the first step is to identify the last state court decision that evaluated the claim on its merits. See Wilson v. Warden, Ga. Diagnostic Prison, 834 F.3d 1227, 1235 (11th Cir. 2016) (en banc), cert. granted, 2017 WL 737820 (U.S. Feb. 27, 2017); Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). Regardless of whether the last state court provided a reasoned opinion, "it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Richter, 562 U.S. at 99; see also Johnson v. Williams, 133 S.Ct. 1088, 1096 (2013).

- 4 -

Where the last adjudication on the merits is "'unaccompanied by an explanation,' a petitioner's burden under section 2254(d) is to 'show [ ] there was no reasonable basis for the state court to deny relief.'" Wilson, 834 F.3d at 1235 (quoting Richter, 562 U.S. at 98). "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." Richter, 562 U.S. at 102; see also Wilson, 834 F.3d at 1235; Marshall, 828 F.3d at 1285.  To determine which theories could have supported the state appellate court's decision, the federal habeas court may look to a state trial court's previous opinion as one example of a reasonable application of law or determination of fact; however, the federal habeas court is not limited to assessing the reasoning of the lower court.  Wilson, 834 F.3d at 1239. As such,

> even when the opinion of a lower state court
> contains flawed reasoning, [AEDPA] requires
> that [the federal court] give the last state
> court to adjudicate the prisoner's claim on
> the merits "the benefit of the doubt," Renico
> [v. Lett, 449 U.S. 766, 733 (2010)] (quoting
> [Woodford v. Visciotti, 537 U.S. 19, 24
> (2002)] ), and presume that it "follow[ed] the
> law," [Woods v. Donald, --- U.S. ----, 135
> U.S. 1372, 1376 (2015)] (quoting Visciotti,
> 537 U.S. at 24).

Wilson at 1238; see also Williams, 133 S.Ct. at 1101 (Scalia, J., concurring).

### III.   PROCEDURAL HISTORY

In the Response at 1-2, Respondents provide a brief procedural history:

> Petitioner was convicted of two offenses in the Florida Circuit Court for the Fourth Judicial Circuit in Clay County.[5]  (Ex. A.) Petitioner appealed to the First District, which per curiam affirmed his conviction on May 20, 2014.  (Ex. B); *Crawford v. State*, 139 So.3d 303 (Fla. 1st DCA May 20, 2014).   The First District issued its mandate on June 17, 2014.  (Ex. B).

> On January 11, 2014, Petitioner filed a state petition for writ of habeas corpus in the Florida Supreme Court, which that court transferred to the First District on April 24, 2014, which that court dismissed for failure to comply with orders of that court on May 29, 2014.  (Exs. C, D.)

> On September 17, 2014, Petitioner filed a Petition Alleging Ineffective Assistance of Appellate Counsel in the First District, which was denied on the merits on October 21, 2014. (Ex. E); *Crawford v. State*, – So.3d –, 2014 WL 5335291 (Fla. 1st DCA Oct. 21, 2014).

---

[5] It is important to note that Petitioner was **not** convicted of two offenses.  He was tried and convicted of aggravated assault (deadly weapon).  Ex. F at 553.  The state nolle prossed count two of the amended information, the charge of domestic battery.  Id. at 562.  In the future, Respondents should not rely on the dockets in preparing the state court procedural history.  Instead, they should reference the actual state court documents to ensure the accuracy of the information related in the history provided to this Court.

> Petitioner has filed no other requests
> for post-conviction relief. (Ex. A.)
> Petitioner filed a Petition for Writ of Habeas
> Corpus on July 17, 2014. (Doc. 1.)

In his Reply, Petitioner contends that he is actually innocent of aggravated assault, and his conviction constitutes a miscarriage of justice. Reply at 1-2.

## IV. EXHAUSTION AND PROCEDURAL DEFAULT

There are prerequisites to a federal habeas review. Respondents assert that Petitioner failed to properly exhaust the remaining twelve grounds. Response at 5-27. In addressing the question of exhaustion, this Court must ask whether Petitioner's claim was properly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in
> federal court, a petitioner must exhaust all
> state court remedies available for challenging
> his conviction. See 28 U.S.C. § 2254(b), (c).
> For a federal claim to be exhausted, the
> petitioner must have "fairly presented [it] to
> the state courts." McNair v. Campbell, 416
> F.3d 1291, 1302 (11th Cir. 2005). The Supreme
> Court has suggested that a litigant could do
> so by including in his claim before the state
> appellate court "the federal source of law on
> which he relies or a case deciding such a
> claim on federal grounds, or by simply
> labeling the claim 'federal.'" Baldwin v.
> Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158
> L.Ed.2d 64 (2004). The Court's guidance in
> Baldwin "must be applied with common sense and
> in light of the purpose underlying the
> exhaustion requirement"—namely, giving the
> state courts "a meaningful opportunity" to
> address the federal claim. McNair, 416 F.3d at
> 1302. Thus, a petitioner could not satisfy the
> exhaustion requirement merely by presenting
> the state court with "all the facts necessary
> to support the claim," or by making a
> "somewhat similar state-law claim." Kelley,

> 377 F.3d at 1343-44. Rather, he must make his claims in a manner that provides the state courts with "the opportunity to apply controlling legal principles to the facts bearing upon (his) [federal] constitutional claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir. 2012), cert. denied, 133 S.Ct. 875 (2013).

Respondents urge this Court to find that all twelve grounds are procedurally defaulted. The Court is mindful that the doctrine of procedural default requires the following:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman, supra, at 747-748, 111 S.Ct. 2546; Sykes, supra, at 84-85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. ----, ----, 130 S.Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of

> federal law. See Coleman, 501 U.S., at 750,
> 111 S.Ct. 2546.

Martinez v. Ryan, 132 S.Ct. 1309, 1316 (2012).

Procedural defaults may be excused under certain circumstances; "[a] petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." Lucas, 682 F.3d at 1353 (citing Bailey v. Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002).

Petitioner did not fairly and/or properly present these federal constitutional claim to the state courts. Any further attempts to seek post conviction relief in the state courts on these grounds will be unavailing. As such, he has procedurally defaulted these claims. Therefore, he must demonstrate cause and prejudice. First, Petitioner must demonstrate cause for his default. This cause has to result from an objective factor external to the defense, and that factor had to prevent Petitioner from raising his constitutional claim which cannot be fairly attributable to his own conduct. Wright v. Hopper, 169 F.3d 695,

706 (11th Cir.), <u>cert</u>. <u>denied</u>, 528 U.S. 934 (1999) (citation omitted).  In order for Petitioner to establish prejudice, he must show that the alleged errors actually and substantially disadvantaged his defense resulting in a denial of fundamental fairness.  <u>Id</u>. (citation omitted).

Upon review, the Court finds that Petitioner has not shown cause and prejudice.  Additionally, he has failed to show that failure to address these claims on the merits would result in a fundamental miscarriage of justice.  The Court finds this is not an extraordinary case as Petitioner has not made a showing of actual innocence rather than mere legal innocence.

Grounds one through twelve are unexhausted and procedurally defaulted.  The fundamental miscarriage of justice exception is inapplicable to the case at bar.  Thus, Petitioner is barred from pursuing grounds one through twelve in federal court.  The Court will, however, address each ground individually, including the question of exhaustion and procedural default, and will provide alternative holdings.

### V.  FINDINGS OF FACT AND CONCLUSIONS OF LAW

#### A.  Ground One

In his first ground, Petitioner raises a due process claim, asserting <u>Miranda</u> warnings were not read to him.  Petition at 5. Respondents urge this Court to conclude that the claim is unexhausted and procedurally defaulted.  Response at 5.  They base this assertion on the fact that Petitioner never filed a pretrial

motion to suppress his confession or admission, nor did he raise the matter on direct appeal.  Id. at 7-8.

Petitioner, in his Reply at 2-3, contends that the First District Court of Appeal (1st DCA) had the opportunity to address his claims because the Florida Supreme Court transferred his state Petition for Writ of Habeas Corpus, Ex. J, to the 1st DCA.  Ex. P. There is a fundamental weakness in Petitioner's reasoning; the 1st DCA dismissed the petition for Petitioner's failure to comply with its order.  Ex. R.  Thus, even if the merits of the petition could have been considered by the 1st DCA, they were never considered due to Petitioner's failure to comply with a court order.

Petitioner has not shown cause for his default.  "Because [the petitioner] has failed to establish one element of the cause and prejudice exception, he cannot show the exception applies.  Johnson v. Singletary, 938 F.2d 1166, 1175 (11th Cir. 1991)(citing Engle v. Isaac, 456 U.S. 107, 134 n. 43 (1982)), cert. denied, 506 U.S. 930 (1992).  Also, Petitioner has not met the actual innocence exception, referred to as the fundamental miscarriage of justice exception.  Since he has failed to make a colorable showing of actual innocence, Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002) (citation omitted), cert. denied, 540 U.S. 956 (2003), the Court will apply the default to ground one.

Petitioner came to this Court without a final state court ruling on his claim.  Therefore, the claim raised in ground one is unexhausted and procedurally defaulted.  Since Petitioner has

- 11 -

failed to show cause and he has failed to make a colorable showing

of actual innocence, the Court will not address the merits of

ground one.   This is not an extraordinary case as Petitioner has

not made a showing of actual innocence rather than mere legal

innocence.   Thus, Petitioner is barred from pursuing this claim in

federal court.

Alternatively, the claim has no merit.   See Response at 8-10.

As recently noted by the Eleventh Circuit,

> "Miranda warnings are required only where
> there has been such a restriction on a
> person's freedom as to render him 'in
> custody.'" Oregon v. Mathiason, 429 U.S. 492,
> 495, 97 S.Ct. 711, 714, 50 L.Ed.2d 714 (1977).
> To determine whether someone is "in custody,"
> we first look at the "circumstances
> surrounding the interrogation." Thompson v.
> Keohane, 516 U.S. 99, 112, 116 S.Ct. 457, 465,
> 133 L.Ed.2d 383 (1995). "Given those
> circumstances," we then consider whether a
> "reasonable person [would] have felt he or she
> was not at liberty to terminate the
> interrogation and leave." Id. The "ultimate
> inquiry is simply whether there is a formal
> arrest or restraint on freedom of movement of
> the degree associated with a formal arrest."
> California v. Beheler, 463 U.S. 1121, 1125,
> 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983)
> (quotation marks omitted).

Cordera v. Sec'y, Fla. Dept. of Corr., 636 F. App'x 552, 555 (11th

Cir. 2016).

Petitioner called the police to his home and the police officer

spoke to him.   He was not "in custody."   Although Petitioner makes

an unsupported by the record allegation that the police blocked the

street, Petition at 5, Petitioner requested the police come to his

- 12 -

home, and he could have walked away from the officers, excused himself, or declined to answer any questions.  It is noted that Petitioner did decline to complete a written statement.  He makes no assertion that he was placed under arrest or threatened with arrest during the interviews.  Since there was no custodial interrogation, there is no merit to the claim raised in ground one.

### B.  Ground Two

In his second ground, Petitioner contends that he was arrested without probable cause.  Petition at 7.  Respondents urge this Court to find that Petitioner has procedurally defaulted this ground.  Response at 10.  The record demonstrates that Petitioner did not challenge the existence of probable cause before the trial, or raise the matter on direct appeal.  As a result, the claim is unexhausted and procedurally defaulted.  Petitioner has failed to demonstrate cause and prejudice.  The Court concludes that a fundamental miscarriage of justice will not result if the Court declines to address this ground.

In the alternative, the claim has no merit.  The victim, Tali Crawford, as well as her ten-year-old daughter, M.C., provided a verbal statement to the police.  Ex. F at 1-3.  Additionally, Ms. Crawford provided a sworn written statement to the police.  Id. at 3.  "A warrantless arrest is supported by probable cause if the arresting officer, at the time of arrest, had reasonable grounds to believe that a felony was being, or had been, committed and that the person to be arrested participated in that felony."  Jarrell v.

- 13 -

<u>Balkcom</u>, 735 F.2d 1242, 1249 (11th Cir. 1984), <u>cert</u>. <u>denied</u>, 471
U.S. 1103 (1985).  <u>See</u> <u>Case v. Eslinger</u>, 555 F.3d 1317, 1327 (11th
Cir.2009)("Probable cause to arrest exists when law enforcement
officials have facts and circumstances within their knowledge
sufficient to warrant a reasonable belief that the suspect had
committed or was committing a crime.") (citation omitted).

Of import, probable cause does not require overwhelmingly
convincing evidence, but simply requires reasonably trustworthy
information.  <u>Id</u>. (citations and quotations omitted).  There was
certainly sufficient information gathered showing a "probability or
chance of criminal activity." <u>Id</u>. (quoting <u>Illinois v. Gates</u>, 462
U.S. 213, 245 n.13 (1983)).  Therefore, ground two is due to be
denied.

Finally, and alternatively, this claim has been rendered moot
as the jury found Petitioner guilty of aggravated assault (deadly
weapon).  Response at 12.  Petitioner is not entitled to habeas
relief.

## C.  Ground Three

In his third ground, Petitioner claims actual innocence.
Petition at 8.  He mentions the Equal Protection Clause of the
Fourteenth Amendment; however, he fails to offer any support for an
equal protection claim.  Even if Petitioner had adequately
presented an equal protection claim, he failed to exhaust such a
claim in the state court system.  Thus the claim would be
unexhausted and procedurally defaulted.  Petitioner has not shown

cause and prejudice or that a fundamental miscarriage of justice would result.

Upon review, Petitioner's claim of actual innocence "is itself the constitutional basis of the habeas petition." Trease v. Sec'y, Dep't of Corr., No. 8:11-cv-233-T-23TBM, 2014 WL 4791996, at *2 (M.D. Fla. Sept. 24, 2014). See Petition at 8; Reply at 2-3. Whether a claim of actual innocence constitutes a freestanding claim for habeas corpus relief is a question that remains unresolved by the United States Supreme Court. See McQuiggin v. Perkins, 133 S.Ct. 1924, 1931 (2013) (recognizing that the issue of whether a freestanding claim of actual innocence presents a claim for habeas relief remains unresolved). In this Circuit, precedent forbids granting federal habeas relief for freestanding, non-capital claims of actual innocence. Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1010-11 (11th Cir.) (per curiam) (citing Herrera v. State, 506 U.S. 390, 400 (1993)), cert. denied, 133 S.Ct. 351 (2012).

In Herrera, 506 U.S. at 400, the Supreme Court noted that "[c]laims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal conviction." The Supreme Court explained: "[t]his rule is grounded in the principle that federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution - not to correct errors of fact."

Id.   Finally, the Supreme Court warned: "[f]ew rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence."   Id. 401.

Apparently, Petitioner is raising an actual innocence claim as the constitutional basis for ground three.   The Eleventh Circuit, however, has stated, "[f]or what it is worth, our precedent **forbids** granting habeas relief based upon a claim of actual innocence, anyway, at least in non-capital cases." Jordan v. Sec'y, Dep't of Corr., 485 F.3d 1351, 1356 (11th Cir.) (citing Brownlee v. Haley, 306 F.3d 1043, 1065 (11th Cir. 2002)) (emphasis added), cert. denied, 522 U.S. 979 (2007).

Petitioner's underlying conviction is not a capital case. Therefore, this Court cannot grant habeas relief on Petitioner's claim of actual innocence; absent an independent constitutional violation occurring in the underlying state criminal proceeding, the claim of actual innocence raised in ground three does not state a ground for federal habeas relief.   See In re: Davis, 565 F.3d 810, 817 (11th Cir. 2009) (per curiam) (discussing freestanding actual innocence claims); Graddy v. Crews, No. 5:13cv317-WS/GRJ, 2014 WL 5341834, at *3 (N.D. Fla. Oct. 20, 2014) ("a free-standing claim of actual innocense [sic] is not recognized as a valid claim for habeas relief").   In sum, it is clear that no federal habeas relief is available for freestanding, non-capital claims of actual innocence.   Murrah v. McDonough, 256 F. App'x 323, 325 (11th Cir.

- 16 -

2007) (per curiam) (a certificate of appealability was granted on the issue of the trustworthiness and effect of the alleged videotaped witness recantation; however, the Eleventh Circuit found that "Murrah's freestanding actual innocence claim is not cognizable under federal habeas law.").

Petitioner's claim of actual innocence, a freestanding claim, is not cognizable in this non-capital, federal habeas proceeding. Thus, based on Circuit precedent, Petitioner is not entitled to habeas relief on his freestanding claim of actual innocence. Ground three is due to be denied.

### D.  Ground Four

In his fourth ground, Petitioner complains of racial discrimination in that he had an all white jury and he is black. Petition at 10.  Liberally construing the pro se Petition and assuming Petitioner is attempting to raise a <u>Batson</u> claim, the claim is unexhausted and procedurally defaulted.

To evaluate an Equal Protection Clause claim concerning the use of peremptory challenges, there is a three-part process set forth in <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986):

> First, a defendant must make a prima facie showing that a peremptory challenge has been exercised on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if that showing has been made, the prosecution must offer a race-neutral basis for striking the juror in question. <u>Id</u>., at 97-98, 106 S.Ct. 1712. Third, in light of the parties' submissions, the trial court must determine whether the defendant has shown purposeful discrimination. <u>Id</u>., at 98, 106 S.Ct. 1712.

- 17 -

Miller-El v. Cockrell, 537 U.S. 322, 328-29 (2003).  Of course, "[t]he Equal Protection Clause forbids a prosecutor from striking potential jurors solely on account of their race."  United States v. Walker, 490 F.3d 1282, 1290 (11th Cir. 2007) (citing Batson v. Kentucky, 476 U.S. 79, 86 (1986)), cert. denied, 552 U.S. 1257 (2008).  Upon review, Petitioner did not make a Batson challenge at trial.

The record shows that the prosecutor and defense counsel used their strikes and exercised their peremptory challenges.  Ex. F at 86-197.  The court inquired: "And Mr. Crawford, again you see now who we have picked for the jury and your attorneys have exercised their peremptory challenges.  You are in agreement with their choices?"  Id. at 197.  Petitioner responded affirmatively.  Id. Also of note, Petitioner did not attempt to raise a Batson claim on direct appeal.  Petitioner has procedurally defaulted this ground. He has not shown cause and prejudice or a fundamental miscarriage of justice will result if his fourth ground is not addressed on its merits.

Alternatively, Petitioner has not established an equal protection violation as he has failed to demonstrate or show systematic exclusion of black venire persons or the use of discriminatory criteria to select jurors.  As noted by the Eleventh Circuit:

> Discriminatory selection of a jury venire
> may also be challenged under the Equal
> Protection Clause of the Fourteenth Amendment.

- 18 -

> Castaneda v. Partida, 430 U.S. 482, 97 S.Ct.
> 1272, 51 L.Ed.2d 498 (1977). To establish a
> prima facie claim for an equal protection
> violation, a petitioner must show (1) that he
> or she is a member of a group capable of being
> singled out for discriminatory treatment, (2)
> that members of this group were substantially
> underrepresented on the venire, and (3) that
> the venire was selected under a practice
> providing an opportunity for discrimination.
> Castaneda, 430 U.S. at 494, 97 S.Ct. at 1280.

Cunningham v. Zant, 928 F.2d 1006, 1013 (11th Cir. 1991).

Although Petitioner represents that he is black, a member of a group capable of being singled out for discriminatory treatment, and suggests that the members of this group were underrepresented on the venire because "the jury pool was all white up to juror number 25[,]" he has completely failed to show that the venire was selected under a practice providing an opportunity for discrimination. Reply at 6. On the contrary, he simply states that he has not been called for jury duty since July 2003, and he knows of one black female that was told, in 2010 or 2011, that she was not needed because the number of individuals required were already there. Id.

Of import, "the purpose of an equal protection claim is to determine whether the disparity in the jury venire is the result of a discriminatory purpose." U.S. v. Grisham, 63 F.3d 1074, 1081 (11th Cir. 1995) (citation omitted), cert. denied, 516 U.S. 1084 (1996). This requires that the Petitioner make a prima facie showing that a discrete group has been intentionally denied the opportunity to serve on a jury. Petitioner has failed to meet this

burden.  The information provided by Petitioner does not permit an inference of discriminatory purpose behind the jury selection process in Clay County.  Moreover, Petitioner has not shown a statistical disparity sufficient to carry his burden.  Therefore, his equal protection claim is due to be denied.

### E.  Ground Five

In his fifth ground, Petitioner raises a due process claim, asserting that he acted in self-defense.  Petition at 16. Petitioner contends that he had a right to defend himself and rely on the Florida stand your ground law.  Id.  He explains that he drew his weapon in self-defense as he had been stabbed in the chest in a previous incident, and he had torn clothing, scratches on his chest and light bruising from his wife's attack.  Id.  He states that he called the police and had a gun permit.  Id.

To the extent Petitioner is asserting that there was error in failing to appropriately apply the stand your ground law to his case, Petitioner has not presented a claim of constitutional dimension.  This type of claim would involve statutory interpretation of a state law by state courts, not federal constitutional error.  This Court will not reexamine state-court determinations on issues of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).  "This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'"  Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir. 1988)

(quoting <u>Willeford v. Estelle</u>, 538 F.2d 1194, 1198 (5th Cir. 1976)).

The federal habeas corpus court will be bound by the Florida court's interpretation of its own laws unless that interpretation breaches a federal constitutional mandate. <u>McCoy v. Newsome</u>, 953 F.2d 1252, 1264 (11th Cir. 1992) (per curiam), <u>cert</u>. <u>denied</u>, 504 U.S. 944 (1992). In sum, the writ of habeas corpus under 28 U.S.C. § 2254 "was not enacted to enforce State-created rights." <u>Cabberiza v. Moore</u>, 217 F.3d 1329, 1333 (11th Cir. 2000) (citing <u>Branan v. Booth</u>, 861 F.2d at 1508), <u>cert</u>. <u>denied</u>, 531 U.S. 1170 (2001). In this instance, a federal writ of habeas corpus is not available. <u>See</u> <u>Jones v. Goodwin</u>, 982 F.2d 464, 471 (11th Cir. 1993); <u>Krasnow v. Navarro</u>, 909 F.2d 451, 452 (11th Cir. 1990).

Alternatively, Petitioner failed to raise this due process/self-defense ground at trial and on direct appeal. Therefore, the claim is unexhausted and procedurally defaulted. Petitioner has failed to demonstrate cause and prejudice or that a fundamental miscarriage of justice would occur if this ground is not reached.

Finally and alternatively, Petitioner apparently contends that the jury reached the wrong result after it was presented evidence of self-defense. The record shows that Petitioner testified that his wife struck him in the chest, and he thought that he had possibly been stabbed. Ex. F at 366-67. When asked why he thought that was a possibility, Petitioner explained that he was stabbed in

the heart in 1990 by his aunt.  Id. at 367.  Petitioner attested that he instinctively reacted to his wife's striking him in the chest by immediately pulling his gun.  Id.

Also, Petitioner said that he did not have "injuries," but he clarified this statement by explaining that his definition of injury does not include scratches.  Id. at 409.  Deputy James Williams testified that he did not observe any injuries on Petitioner's body, but Williams admitted that he did not look underneath Petitioner's shirt or ask Petitioner to remove his shirt.  Id. at 415-16.  Also of note, Petitioner testified that after the incident, he called the police.  Id. at 371.  He also referred to his concealed weapons permit.  Id. at 372.

Certainly of importance, the record demonstrates that the trial court instructed the jury on self-defense:

> An issue in this case is whether the Defendant acted in self-defense.  It is a defense to the offense which Zaynus Clifford Crawford is charged if the show of force to Tali Crawford resulted from the justifiable use of deadly force.  Deadly force means force likely to cause death or great bodily harm.  A person is justified in using deadly force if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another.  However, the use of deadly force is not justifiable if you find that Zaynus Clifford Crawford initially provoked the use of force against himself, unless the force sojourned [sic] the Defendant was so great that he reasonably believed that he was in imminent danger of death or great bodily harm and had exhausted every reasonable means to escape the danger other than using deadly force on Tali Crawford; or B) In good faith the Defendant

> withdrew from physical contact with Tali
> Crawford and clearly indicated to Tali
> Crawford that he wanted to withdraw and stop
> the use of deadly force, but Tali Crawford
> continued or resumed the use of force.

Ex. F at 530-31.

The court also instructed the jury on justification for the use of deadly force and the right to stand your ground under particular circumstances:

> In deciding whether the Defendant was
> justified in the use of deadly force, you must
> judge him by the circumstances by which he was
> surrounded at the time the force was used.
> The danger facing the Defendant need not have
> been actual; however, to justify the use of
> deadly force, the appearance of danger must
> have been so real that a reasonably cautious
> and prudent person under the same
> circumstances would have believed that the
> danger could be avoided only through the use
> of that force.  Based upon appearances, the
> Defendant must have actually believed that the
> danger was real.
>
> If the Defendant was not engaged in an
> unlawful activity and was attacked in any
> place where he had a right to be, **he had no
> duty to retreat and had the right to stand his
> ground and meet force with force, including
> deadly force if he reasonably believed that it
> was necessary to do so to prevent death or
> great bodily harm to himself or to prevent the
> commission of a forcible felony.**

Id. at 531-32 (emphasis added).

With respect to ground five, Petitioner is not entitled to habeas relief.  Petitioner took the stand and testified.  The court properly instructed the jury on self-defense.  The jury deliberated and found Petitioner guilty of aggravated assault, including

- 23 -

possession of a firearm during the commission of the offense.  Id.
at 553.  This ground is due to be denied.

### F.  Ground Six

In the sixth ground of the habeas Petition, Petitioner raises
a spousal immunity claim.  Petition at 19.  He claims that his wife
testified against him in violation of spousal immunity.  Id.

It should be noted that the purpose of a federal habeas
proceeding is review of the lawfulness of Petitioner's custody to
determine whether that custody is in violation of the Constitution
or laws or treaties of the United States.  See Coleman v. Thompson,
501 U.S. 722 (1991).  A violation of a state spousal immunity law
would be a state law claim, not a claim of constitutional
dimension.  As such, this Court does not have jurisdiction to
address the claim, and this claim is due to be denied as it fails
to state a claim of constitutional claim.

In the alternative, this ground is unexhausted and
procedurally defaulted.  Petitioner failed to object on this basis
at trial, and he failed to raise the issue on direct appeal.  Also
of note, Petitioner failed to demonstrate cause and prejudice for
the default or show that a fundamental miscarriage of justice would
result if the claim is not addressed on its merits.

Alternatively, this claim has no merit.  The husband-wife
privilege, Fla. Stat. § 90.504, does not apply to certain
proceedings.  For example, there is no husband-wife privilege "[i]n
a criminal proceeding in which one spouse is charged with a crime

- 24 -

committed at any time against the person or property of the other spouse, or the person or property of a child of either." Fla. Stat. § 90.504(3)(b).

In this case, the state charged Petitioner with a crime against his spouse, Tali Crawford. Thus, the husband-wife privilege was inapplicable to the charged offense of aggravated assault. Petitioner is not entitled to habeas relief.

### G.   Ground Seven

In his seventh ground for habeas relief, Petitioner claims a Brady violation based on the state's failure to disclose Petitioner's ripped shirt and scratches. He never raised a Brady claim before the trial court, and he did not raise this ground on direct appeal. As a result, the claim is unexhausted and procedural defaulted. Petitioner has not shown cause or prejudice or that a fundamental miscarriage of justice will result if the Brady claim is not addressed on its merits.

Alternatively, this ground has no merit. The purported Brady violation concerned the state's alleged suppression of Petitioner's ripped shirt, the permit to carry a weapon, and the existence of scars on his body at the time of trial. Petition at 21. The evidentiary record refutes Petitioner's claim. Petitioner and his counsel knew about the ripped shirt, the concealed weapons permit, and the referenced scars. None of this evidence was suppressed by the state.

- 25 -

In particular, the evidence of scars on Petitioner's body was not withheld or suppressed and was within his personal knowledge. Petitioner testified that he had been stabbed in the chest in 1990. Ex. F at 367.  He testified that he suffered a scratch from his neck to his chest.  Id. at 392.  He also stated there were red marks on his chest as well.  Id. at 393.

In addition, Petitioner testified that he had a concealed weapons permit.  Id. at 372.  He also testified about the shirt being ripped and the buttons being ripped off of the shirt during the struggle.  Id. at 392-93.  All of this evidence was readily available to the defense and defense counsel and within Petitioner's own knowledge.  Of import, the record shows that the ripped shirt was thoroughly discussed prior to trial, and defense counsel had the opportunity to review the evidence.  Ex. F at 232-33.  Based on the above, ground seven is due to be denied. Petitioner is not entitled to habeas relief on this ground.

## H.  Ground Eight

Petitioner raises a due process violation claiming the state made a constructive amendment of the information by stating that Petitioner could be found guilty of the lesser included offense of improper exhibition of a firearm or dangerous weapon.  Petition at 23.  Petitioner asserts that after arguments had been made, the prosecutor told the jury that Petitioner could possibly be found guilty of improper exhibition of a firearm, adding it at the last moment as a safety net.  Id.

- 26 -

The Court first recognizes that Petitioner was convicted of a higher offense, aggravated assault, not improper exhibition of a firearm or dangerous weapon.  Next, the record reflects that the main offense and the lesser included offenses were discussed during the charge conference.  Ex. F. at 426-39.  The court asked the parties if there was any objection to the lesser included offenses to aggravated assault.  Id. at 430.  No objections were made.  Id. In fact, the defense requested "both lessers."  Id.

Thereafter, the court revisited the matter.  Id. at 434.  The court pointed out that similar cases held "that where there was a lesser included that could be supported by the evidence that doesn't involve as an element of deadly force, it is appropriate to give the instruction if requested, for example if improper exhibition."  Id. Defense counsel agreed with the court.  Id.  The court noted that based on Petitioner's testimony, there is a version of the events, if the jury were to believe him, that would support the lesser included instruction.  Id. at 435.  Defense counsel again agreed with the court.  Id.  The court concluded: "I'm making that finding, so."  Id.

As vetted in the conference, the court instructed the jury on aggravated assault and the two lesser included offenses, assault and improper exhibition of a dangerous weapon or firearm.  Id. at 528-30.  The court prefaced its instruction on the lesser included crimes by stating, "[t]he lesser crimes indicated in the definition

of aggravated assault are: Assault and improper exhibition of a dangerous weapon or firearm." Id. at 529-30.

The lesser included offense doctrine "is on sound constitutional footing and is available to the government as well as to defendants." Fransaw v. Lynaugh, 810 F.2d 518, 529 (5th Cir.) (citation omitted), cert. denied, 483 U.S. 1008 (1987). In Petitioner's criminal case, the amended information charged Petitioner with aggravated assault. The record demonstrates that Petitioner's counsel certainly had notice and an opportunity to object to the lesser included offenses to aggravated assault being given in the instructions. In fact, defense counsel actually requested that the lesser included offenses be included in the charge to the jury. Thus, there was no due process violation under these circumstances as the defense was put on notice of the charges and agreed to the instruction on "both lessers." The prosecutor was certainly not in the wrong for arguing that Petitioner could possibly be found guilty of improper exhibition of a firearm.

Alternatively, Petitioner failed to exhaust this ground. He did not object at trial, and he did not raise the issue on direct appeal. Thus, ground eight is procedurally defaulted. Petitioner has not shown cause and prejudice and he has not shown that a fundamental miscarriage of justice will result if the ground is not addressed on its merits.

## I.  Ground Nine

Petitioner, in his ninth ground, claims the court gave an improper jury instruction requiring unanimity, without providing room for individual decisions and without giving an Allen charge. Petition at 25.  Petitioner did not object at trial to the instruction and did not raise the matter on direct appeal. Therefore, the claim is unexhausted and procedurally defaulted.  He has failed to demonstrate cause and prejudice, and he has failed to show that a fundamental miscarriage of justice will result if the claim is not addressed on its merits.

In the alternative, this ground has no merit.  Apparently Petitioner is contending that the judge's instructions coerced the jury into rendering a guilty verdict.  Petition at 25.  In the Petition, Petitioner complains that by instructing the jury to come to a unanimous verdict, the court did not give each juror the freedom to choose to make an individual decision. Id. Petitioner also asserts that the court should have given an Allen charge after instructing the jury that it must come to a unanimous verdict.[6]

In considering the issue of whether a court's instruction violates due process, the Eleventh Circuit provides the following guidance:

> The applicable standard here is whether under the totality of the circumstances the trial

---

[6] An Allen charge advises jurors to have deference for each other's views and exhorts the jury to reach a verdict, but it is to be given only when truly warranted.

- 29 -

> judge's instruction to the jury was coercive. <u>Lowenfield v. Phelps</u>, --- U.S. ----, 108 S.Ct. 546, 550, 98 L.Ed.2d 568 (1988); <u>Jenkins v. United States</u>, 380 U.S. 445, 446, 85 S.Ct. 1059, 1060, 13 L.Ed.2d 957 (1965) (per curiam). Courts may not evaluate a single jury instruction in isolation, but must view it in light of the overall charge. We must decide whether the "instruction by itself so infected the entire trial that the resulting conviction violates due process." <u>Cupp v. Naughten</u>, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973); <u>Boyd v. United States</u>, 271 U.S. 104, 107, 46 S.Ct. 442, 443, 70 L.Ed. 857 (1926).

<u>Watson v. State of Ala.</u>, 841 F.2d 1074, 1076 (11th Cir.), <u>cert</u>. <u>denied</u>, 488 U.S. 864 (1988).

Upon review of the jury instructions, it is quite apparent that the trial court provided the jury with the elements of the charge against Petitioner, including the requested lesser included offenses. Ex. F at 527-48. The court also detailed the burden of proof. <u>Id</u>. The court instructed: "[w]hatever verdict you render must be unanimous; that is, each juror must agree to the same verdict." <u>Id</u>. at 543. As noted by Respondents, Petitioner has confused individual decisions with a unanimous verdict. <u>See</u> Response at 22. The verdict must be unanimous, but the trial court did not suggest, imply, or pressure the jury to return a particular verdict.

Supreme Court Justice Brown imparted these words of wisdom concerning the opinions of individual jurors and the goal to reach a unanimous verdict:

> While, undoubtedly, the verdict of the jury should represent the opinion of each individual juror, it by no means follows that opinions may not be changed by conference in the jury room. The very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves. It certainly cannot be the law that each juror shou[l]d not listen with deference to the arguments, and with a distrust of his own judgment, if he finds a large majority of the jury taking a different view of the case from what he does himself. It cannot be that each juror should go to the jury room with a blind determination that the verdict shall represent his opinion of the case at that moment, or that he should close his ears to the arguments of men who are equally honest and intelligent as himself. There was no error in these instructions.

Allen v. United States, 164 U.S. 492, 501–502 (1896).

The Court is not persuaded by Petitioner's argument that an Allen charge should have been given. The record shows that the court responded to two jury questions, but the jury was never deadlocked. An Allen charge was uncalled for under these circumstances.

In conclusion, ground nine is due to be denied. There is no constitutional violation entitling Petitioner to habeas relief.

## J. Ground Ten

In this ground, Petitioner complains of prosecutorial misconduct during closing arguments. Petition at 27. In his Reply, Petitioner mentions that the prosecutor injected his personal beliefs about the evidence into his argument and he called the Petitioner a liar. Reply at 10. Petitioner contends that the

prosecutor used knowingly false testimony from the victim and the police officer to make the state's case.

A prosecutorial misconduct claim should be raised on direct appeal. Petitioner did not raise a prosecutorial misconduct claim at trial or on direct appeal. The claim raised in ground ten is unexhausted and procedurally defaulted. Petitioner has not shown that failure to address the merits of the prosecutorial misconduct claim will result in a fundamental miscarriage of justice.

Alternatively, the claim is due to be denied. To the extent Petitioner is claiming prosecutorial misconduct during closing argument, attorneys are permitted wide latitude in their closing arguments. However, attorneys should not make "[i]mproper suggestions, insinuations, or assertions" that are intended to mislead the jury or appeal to passions or prejudices during closing arguments; U.S. v. Hope, 608 F. App'x 831, 840 (11th Cir. 2015) (per curiam), but the prosecutor is entitled to offer the jury his view of the evidence presented. In doing so, the prosecutor has wide latitude in asking the jury to draw all logical inferences from the evidence presented.

Upon review of the closing argument, the prosecutor's remarks did not deceive the jury. Any misimpression left by the prosecutor's statements was corrected by the judge's instructions. In sum, the prosecutor's comments did not deprive Petitioner of a fair and impartial trial. Viewing the prosecutor's arguments along

with the court's instructions, the jury was not improperly misled. As such, Petitioner is not entitled to habeas relief.

With regard to Tali Crawford's testimony, she stated she was holding her youngest daughter when Petitioner pointed the gun at her.  Ex. F at 275.  Petitioner's daughter testified that her mother was holding the younger sister during the course of the incident and while Petitioner was choking the mother and pointing the gun at her.  Id. at 312-14.

When asked on direct whether she was afraid the Defendant was going to shoot her, Tali Crawford stated: "I honestly didn't know what was going to happen because all of it was unexpected." Ex. F at 278.  However, the prosecutor re-called Ms. Crawford to rehabilitate her testimony.  On rebuttal direct examination, Ms. Crawford said that when she had the baby in her arms and Petitioner had the gun pointed at her head, she was scared.  Id. at 451.  The court overruled defense counsel's objection to this line of questioning.  Id.

Officer Williams testified that when he arrived Ms. Crawford was calm.  Id. at 326.  No one looked like they had suffered injuries and rescue was not called.  Id.  He said Petitioner had a ripped shirt.  Id. at 327.  Officer Williams did not observe any marks, scratches, or bruises on Petitioner.  Id.  On rebuttal, Officer Williams testified that Petitioner told him that his wife was holding the baby during the physical confrontation.  Ex. F at 413-14.  Officer Williams further testified that Petitioner said he

pointed the gun at his wife, pushed her against the wall, and told her he could legally shoot her for attacking him.  Id. at 414. Officer Williams attested that Petitioner told him he would rather be shot than give his wife the phone or anything from the home. Id. at 414-15.

When Petitioner testified, he denied that he told Officer Williams that his wife was holding the baby the whole time.  Ex. F at 377.  Petitioner also denied telling the officer that he pointed the gun at his wife.  Id. at 377-78.  Petitioner clarified that he told the officer he pushed his wife against a window, not a wall. Id. at 378-79.  Petitioner denied telling the officer that he told his wife he could legally shoot her for attacking him.  Id. at 379.

The initial arrest report states, in pertinent part:

> Tali said she reached for his [Petitioner's] pocket to take the phone and he pushed her backwards.  She said she was holding her seven month old child in her arms at the time.  She said he pushed her several more times and she began to fall backwards. She grabbed his shirt to keep from falling and his shirt ripped.  She stated Zaynus grabbed her by the neck and shoved her again and pulled his handgun from his waistband and pointed it at her head.  She stated they ended up in the front room and Zaynus pushed her up against the front window and pointed the gun at her again and said you know I could shoot you right know [sic] and get away with it.

> Tali said her ten year old daughter, [M.C.], witnesses [sic] this incident and was screaming for her dad to stop.  She said when Zaynus was holding her against the front window she told [M.C.] to take the baby and go across the street to the neighbor's house.

> She said she was finally able to get away and
> also went across the street.

Ex. F at 2.

In the arrest report, Officer Williams referenced his conversation with Petitioner.  In his report, Officer Williams noted that Petitioner confirmed that he had an argument with his wife about the phone, but alleged that Tali punched him in the stomach and Petitioner responded by pushing her away, but Tali continued to attack him.  Petitioner "admitted she was holding the infant child the whole time." Id.  Petitioner said he was in fear for his safety and pulled his gun and pointed it at her and told her to back off.  Id.  "He said she came at him again and he pushed her again and held her against the wall and told her he could legally shoot her for attacking him." Id.

Finally, the report reflects that Petitioner's daughter said that her mom and dad were pushing each other, and her dad pointed the gun at her mom, "saying he would shoot her." Id.  Finally, Petitioner's daughter told Officer Williams she had to take the baby from her mother's arms and run across the street. Id.

Officer Williams conducted an investigation at the scene.  Ex. F at 322.  He spoke with Tali Crawford and the Petitioner at the scene.  Id. at 326.  Officer Williams said he conducted a thorough investigation that night and referenced his report.  Id. at 327, 417-18, 420.

In light of all of the above, Petitioner's claim that the prosecutor used testimony he knew to be false is unsupported by the record.  The testimony at trial from the victim, the Petitioner's daughter, and Officer Williams was certainly consistent with the information gathered in the investigation and memorialized in the report.  Petitioner is not entitled to habeas relief on ground ten.

### K.   Ground Eleven

In the eleventh ground, Petitioner raises a claim of judicial misconduct.  Petition at 30.  As noted by Respondents, Petitioner complains that the trial court judge did not act on a letter by "a represented *pro se* litigant" that did not concern any complaints about his counsel.  Response at 24.

Petitioner did not exhaust his claim of judicial misconduct in the state court system.  He did not raise a claim of judicial misconduct in the trial court, and he did not raise the matter on direct appeal.  Therefore, the claim of judicial misconduct is unexhausted and procedurally defaulted.  Petitioner has not shown that failure to address this ground will result in a fundamental miscarriage of justice.

Alternatively, the trial court properly did not act on a letter written by Petitioner when he was represented by counsel.  Response at 25.  Petitioner admits that the Respondents are correct in this regard.  Reply at 10.

Petitioner also contends that the trial judge pressured him to testify.   The   record   belies   this   assertion.    There   was   some question  as  to  whether  jail  calls  between  Petitioner  and  his brother  were  going  to  be  allowed.   Ex.  F  at  222-28.   The  court stated  it  was  going  to  delay  its  decision,  and  then  said,  "[i]f  he wants  to  testify,  which  I'm  sure  he  will--[.]"  Id.  at  228-29.

This  statement  does  not  amount  to  undue  pressure.   The  court reasonably  assumed  that  Petitioner  was  going  to  testify  after counsel  told  the  court  that  it  was  very  concerned  about  any introduction  of  the  jail  calls.   Ex.  F  at  223.   Defense  counsel said,  "[i]t  will  affect  whether  my  client  testifies  and  how  he testifies  based  on  the  calls."  Id.   After  the  state  rested,  the court  asked  defense  counsel  if  there  were  any  witnesses  that  could be  put  on  other  than  "your  client."  Id.  319.   Defendant  counsel responded  in  the  negative.   Id.   The  state  announced  that  it  was willing  to  stipulate  to  not  using  the  jail  calls  if  Petitioner testified  that  day.   Id.   Defense  counsel  announced  that  they  were ready  to  proceed.   Id.  at  320.

After  Officer  James  Williams  testified  and  the  state  rested, the  defense  made  a  motion  for  judgment  of  acquittal.   Id.  at  329. The  court  denied  the  motion.   Id.  at  331.   At  this  point,  the  court asked  defense  counsel  if  Petitioner  was  going  to  testify.   Id. Defense  counsel  responded  in  the  affirmative.   Id.   Thus,  the record  shows  that  the  defense  announced  to  the  court  that

Petitioner intended to testify after the state stipulated to not using the jail calls and the court denied the defense motion for judgment of acquittal.

Immediately thereafter, the court conducted a very thorough inquiry as to whether Petitioner desired to take the stand, giving Petitioner every opportunity to make his own decision after receiving advice from counsel and after fully considering his decision:

> THE COURT: Okay.  Mr. Crawford, your attorney has indicated to me that you do intend to take the stand and testify in this case.
>
> THE DEFENDANT: Yes.
>
> THE COURT: All right.  And as you heard me advise the Jury at least a couple times, do you understand that I told them before and I'm going to tell them again that if you do not testify, I'll tell them that's an exercise of your Constitutional right.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And you understand that I will further instruct them that if you chose not to testify, that they cannot hold that against you in any way.  Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: And do you understand that they can't draw any negative inferences, nothing of that sort.  Do you understand that?
>
> THE DEFENDANT: Yes.

THE COURT: Okay.  Now, have you discussed with your attorneys the decision whether to testify or not?

THE DEFENDANT: Yes.

THE COURT: And have they answered all the questions that you had about that?

THE DEFENDANT: Only thing I could think of at this time.

THE COURT: Okay.  Do you understand if you do testify, just like any other witness in the case, the State could cross-examine you after you testify in response to questions from your attorney.

THE DEFENDANT: Yes.

THE COURT: Just like any other witness.

THE DEFENDANT: Yes.

THE COURT: Okay.  And your attorneys have advised you of both the risks and the benefits of testifying and not testifying?

THE DEFENDANT: Yes.  They have.

THE COURT: And do you understand that your attorneys can make recommendations to you, **but ultimately the decision whether to testify or not is your decision alone.**  Do you understand that?

THE DEFENDANT: Yes.

THE COURT: **And is it your decision -- your own independent decision to testify?**

**THE DEFENDANT: Yes.  It is.**

Ex. F at 331-33 (emphasis added).

Petitioner also asserts that the court told the jury that the state did not have to prove the victim was in fear, referencing the transcript at page 459, lines 14-16.   This contention has absolutely no merit.   The jury was not in the courtroom.   Id. at 458.   This discussion concerning the law took place outside the presence of the jury.   Id. at 459.

Petitioner claims that the trial court flipped the burden of proof.   Upon a careful review of the charge to the jury, the Court finds that is not the case.   The court emphasized that the presumption of innocence stays with the Defendant, "as to each material allegation in the information, through each stage of the trial, unless it has been overcome by the evidence to the exclusion of and beyond a reasonable doubt."   Ex. F at 538.   The court thoroughly explained the state's burden of proof.   Id. at 539. Petitioner is not entitled to habeas relief on ground eleven, his claim of judicial misconduct.

### L.  Ground Twelve

In his twelfth and final ground, Petitioner makes a claim of altered transcripts.   Petition at 33.   He asserts that the transcripts have been altered, referencing the rebuttal testimony of Officer James Williams and closing arguments.   Petition at 33. Once again, Petitioner has failed to exhaust his state court remedies.   He did not raise this issue on direct appeal.   He could have sought reconstruction of the record due to purported changes

or omissions in the transcript.  He failed to do so.  Petitioner has failed to show cause and prejudice or that a fundamental miscarriage of justice will result.

Alternatively, this ground is without merit.  The court reporter for the trial, Angela M. Mathis, submits in her Affidavit, Ex. U, that she has reviewed her stenographic notes of the trial's rebuttal testimony and closing arguments and compared it to the transcript of the trial.  She affirms "that it is an accurate reflection of what occurred at the trial[.]" Id.

As such, ground twelve is due to be denied.  Petitioner is not entitled to habeas relief.

Accordingly, it is

**ORDERED AND ADJUDGED:**

1.   The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The **Clerk of the Court** shall enter judgment accordingly and close this case.

3.   If Petitioner appeals the denial of his Petition, **the Court denies a certificate of appealability.**[7]  Because this Court

---

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve

has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 24th day of March, 2017.

_____
BRIAN J. DAVIS
United States District Judge

sa 3/14
c:
Zaynus Clifford Crawford
Counsel of Record

---

encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.